# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

MMSP, LLC, *et al.*,

                 Plaintiffs,

     vs.

MINTA MAE STOVALL, *et al.*,

                 Defendants.

Case No.: 2:22-cv-01218-GMN-MDC

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

      Pending before the Court is the Motion for Summary Judgment, (ECF No. 141), filed by Defendants Minta Mae Stovall, an individual, and Minta Mae Stovall Trustee of the Minta Mae Stovall Revocable Living Trust (collectively "Stovall"). Plaintiffs MMSP, LLC and Gerald Alderson filed a Response, (ECF No. 147), to which Stovall replied, (ECF No. 149). For the reasons discussed below, the Court DENIES Stovall's Motion for Summary Judgment.

## I.  BACKGROUND

      Plaintiffs' First Amended Complaint ("FAC") asserts claims for breach of contract and account stated against Stovall, conversion against Stovall and Pettis, and equitable indemnity against Pettis. (FAC, ECF No. 109). Plaintiffs allege that Defendants owe $180,970.17 pursuant to the Retainer and Consulting Services Agreement dated October 18, 2020 ("Consulting Agreement"), $1,055,620 under the Amended and Restated Secured Loan Agreement and Promissory Note dated January 1, 2020 ("Loan Agreement"), and unknown damages under the Loan Servicing Agreement dated January 1, 2017 ("Loan Servicing Agreement"). (*Id.*).

      In or about 2005, Stovall retained the services of Alderson as a financial advisor to advise her regarding her financial affairs. (Alderson Dep. 21:3–7, 22:5–9, Ex. D. to Mot. Summ. J., ECF No. 141-1); (Stovall Dep. 14:13–24, ECF No. 141-1). In connection with the

services he provided to Stovall, Alderson formed the entity MMSP, LLC. (Alderson Decl. 23:8–18, Ex. D to Mot. Summ. J.).  At the time MMSP was formed, Alderson was the sole member and manager. (*Id.* 28:6–11).  During the course of the business relationship, Stovall and MMSP entered into several agreements, three of which are at issue in this case: the Consulting Agreement, Loan Agreement, and Loan Servicing Agreement.

**A. Consulting Agreement**

On October 18, 2020, Stovall and MMSP entered into the Consulting Agreement wherein MMSP was to provide certain specified administrative and restructuring services to Stovall. (*Id.* 115:7–16); (Consulting Agreement at 1, Ex. J to Mot. Summ. J., ECF No. 141-1). Section 3 of the Consulting Agreement states:

> 3. Fees; Payment Terms. MMS [Minta Mae Stovall] and MMST [Minta Mae Stovall as Trustee of the Minta Mae Revocable Trust] agree to pay MMSP for its Services in connection with this Agreement at the hourly rate of $250.00, billed in quarter hour increments, plus all direct expenses incurred in implementing the Services hereunder. Upon request, MMSP shall provide MMS and MMST with a statement of hours incurred for its Services along with a description of the work performed. MMSP recognizes and accepts that MMS and MMST may not be able to pay for some or all of its Services as they are provided although they agree to use their best efforts to do so. MMSP, in conjunction with its efforts hereunder, arrange new or additional financing, secured or unsecured, to pay for its Services performed if MMS and MMST are not able to pay for such services currently.

(Consulting Agreement at 2, Ex. J. to Mot. Summ. J.)

**B. Loan Agreement**

On January 1, 2020, Stovall and MMSP entered into the Loan Agreement which updated previously entered into loan agreements and reflected the current amounts due to MMSP (Lender) by Stovall (Borrower). (Alderson Dep. 93:4–19, Ex. D. to Mot. Summ. J.); (Loan Agreement at 1, Ex. K to Mot. Summ. J., EXF No. 141-1).  There is a dispute as to whether the Loan Agreement was secured by real property commonly referred to as "the Back 54 Acres." Paragraph 8 of the Loan Agreement states:

> 8. Relationship to the Loan and Deed of Trust on the "back 54 Acres". The Lender holds a note secured by a Deed of Trust related to [home address], as additional security for this Loan . . . Title to the property, subject to the above described note and Deed of Trust, was transferred to the Borrower's children, David R. Pettis and Susanna I Pettis.

(Loan Agreement at 3, Ex. K to Mot. Summ. J.).

On or about May 13, 2021, MMSP completed a foreclosure sale of the Back 54 Acres in the amount of $339,127.00. (Notice of Default and Election To Sell Under Deed of Trust ["NOD"], Ex. F to Mot. Summ. J., EXF No. 141-1); ( Trustee's Deed Upon Sale ["Trustee's Deed"], Ex. G to Mot. Summ. J., EXF No. 141-1).  The Trustee's Deed recorded on May 13, 2021 transferred title to the Back 54 Acres to a non-party.

**C. Loan Servicing Agreement**

On January 1, 2017, MMSP and Stovall entered into the Loan Servicing Agreement which set forth how payments made pursuant to various loans would be applied. (Loan Servicing Agreement at 1, Ex. L to Mot. Summ. J., ECF No. 141-1).  The Loan Agreement states:

> 2. Payments.  Any and all distributions from Apollo that are received by [MMSPDC LLC] shall be paid, in their entirety, to MMSP LLC and are to be applied to the Purchased Loan and allocated to interest or principal as determined by the terms thereof. Any and all payments received from the sale of all or a portion of the Apollo interest (attributable to the Borrower), shall first be paid and applied to the original MMSP LLC loan to the Borrower to the extent such payments would apply to interest due thereon; while any remaining proceeds shall be applied to the Purchased Loan.  Any proceeds or other amounts in the possession of [MMSPDC LLC] for the benefit of the Borrower from any other source shall be paid to the Lender and applied to the installment loan.

(*Id.* at 1).

Stovall now moves for summary judgment on all claims pled against her.

1  II.    **LEGAL STANDARD**

2      The Federal Rules of Civil Procedure provide for summary adjudication when the

3  pleadings, depositions, answers to interrogatories, and admissions on file, together with the

4  affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant

5  is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that

6  may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

7  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to

8  return a verdict for the nonmoving party. *Id.*  "The amount of evidence necessary to raise a

9  genuine issue of material fact is enough 'to require a jury or judge to resolve the parties'

10  differing versions of the truth at trial." *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir.

11  1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).  "Summary

12  judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving

13  party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd.*

14  *P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).  A principal purpose of summary judgment is "to

15  isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477

16  U.S. 317, 323–24 (1986).

17      In determining summary judgment, a court applies a burden-shifting analysis.  "When

18  the party moving for summary judgment would bear the burden of proof at trial, it must come

19  forward with evidence which would entitle it to a directed verdict if the evidence went

20  uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing

21  the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

22  *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and

23  quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving

24  the claim or defense, the moving party can meet its burden in two ways: (1) by presenting

25  evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating

that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn

1  in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is

2  not significantly probative, summary judgment may be granted. *See id.* at 249–50.

3  **III.    DISCUSSION**

4      Stovall moves for summary judgment on all claims alleged against her.[1]  The Court

5  begins by determining whether summary judgment is warranted on the breach of contract claim

6  before addressing the claim for account stated and conversion.

7      **A. Breach of Contract**

8      Stovall moves for summary judgment on the breach of contract claim pled against her.

9  Stovall argues that Plaintiffs' breach of contract claim fails because the three agreements at

10  issue are unenforceable and/or have not been breached. (Mot. Summ. J. 9:25–26, ECF No.

11  141).  Stovall has the burden of either presenting evidence to negate an essential element of

12  Plaintiffs' breach of contract claim or (2) demonstrating that Plaintiffs fail to make a showing

13  sufficient to establish an element essential of their breach of contract claim.

14      A claim for breach of contract begins with an allegation that an enforceable contract

15  exists. *See* Restatement (Second) of Contracts § 203 (2007); *Calloway v. City of Reno*, 993 P.2d

16  1259, 1263 (Nev. 2000), *overruled on other grounds*.  An enforceable contract requires: (1) an

17  offer and acceptance, (2) meeting of the minds, and (3) consideration. *May v. Anderson*, 119

18  P.3d 1254, 1257 (Nev. 2005).  Under Nevada law, to prove a breach of contract a plaintiff must

19  show: "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a

20  result of the breach." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 899 (9th Cir. 2013).

21  Further, with respect to the element of breach, a breach of a contract is "a material failure of

---

[1] Stovall also requests that the Court take judicial notice of certain court documents and public records that she attaches as exhibits. (Request for Judicial Notice, Ex. A to Mot. Summ. J., ECF No. 141-1).  A court may take judicial notice of records in a court file. Fed. R. Evid. 201(b).  A court may also take judicial notice of documents recorded with the County or other public records. Fed. R. Evid. 201(b); *Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir. 1999).  Accordingly, the Court GRANTS Stovall's request to take judicial notice.

1   performance of a duty arising under or imposed by agreement." *Bernard v. Rockhill Dev. Co.*,

2   734 P.2d 1238, 1240 (Nev. 1987).  Stovall moves for summary judgment on each contract at

3   issue: the Consulting Agreement, Loan Agreement, and Loan Servicing Agreement.  The Court

4   begins by analyzing the Consulting Agreement.

5                           **1. Consulting Agreement**

6           Under Nevada state law, when a contract is clear and unambiguous, contract

7   construction is a question of law and "suitable for determination by summary judgment."

8   *Ellison v.California State Auto. Ass'n*, 797 P.2d 975, 977 (Nev. 1990); s*ee also Galardi v.*

9   *Naples Polaris, LLC*, 301 P.3d 364, 366 (Nev. 2013).  "It has long been the policy in Nevada

10  that absent some countervailing reason, contracts will be construed from the written language

11  and enforced as written." *Ellison*, 993 P.2d at 977.

12          First, Stovall argues that the Consulting Agreement is unenforceable because it lacks

13  material terms. (Mot. Summ. J. 10:27–11:3).  "Basic contract principles require, for an

14  enforceable contract, an offer and acceptance, meeting of the minds, and consideration." *May v.*

15  *Anderson*, 119 P.3d 1254, 1257 (Nev. 2005).  "A meeting of the minds exists when the parties

16  have agreed upon the contract's essential terms." *Certified Fire Prot. Inc. v. Precision Constr.*,

17  283 P.3d 250, 255 (Nev. 2012).  "Which terms are essential 'depends on the agreement and its

18  context and also on the subsequent conduct of the parties, including the dispute which arises

19  and the remedy sought.'" *Id.*  "When important terms remain unresolved, a binding agreement

20  cannot exist." *Tropicana Hotel Corp. v. Speer*, 692 P.2d 499, 501 (Nev. 1985).

21          Stovall contends that MMSP cannot collect money due for services under the Consulting

22  Agreement through the separate financing provision because it lacks material terms.

23  Specifically, Stovall argues that there was never a meeting of the minds between MMSP and

24  Stovall regarding any financing that MMSP would obtain to pay for the services MMSP

25  provided to Stovall under the Consulting Agreement. (Mot. Summ. J. 11:14–16).  The

1    Consulting Agreement states that "MMSP, in conjunction with its efforts hereunder, arrange

2    new or additional financing, secured or unsecured, to pay for its Services performed if MMS

3    and MMST are not be able to pay for such services currently." (Consulting Agreement at 2, Ex.

4    J to Mot. Summ. J., ECF No. 141-1).  Stovall points out that the Consulting Agreement does

5    not contain terms regarding the "financing" to be obtained, such as the duration of the

6    financing, the amount of loan payments, or when payment would be due.  Indeed, payment

7    terms can be material terms. *Matter of Estate of Kern*, 823 P.2d 275, 277 (Nev. 1991).  Thus,

8    Stovall meets her initial burden.

9        The burden now shifts to Plaintiffs to establish that a genuine issue of material fact

10   exists.  Stovall argues that the terms of any financing that Stovall would need to execute were

11   not essential terms to the Consulting Agreement. (Resp. 16:10–11, ECF No. 147).  Plaintiffs

12   argue that the scope of services that MMSP was to provide, when MMSP was to provide them,

13   the rate at which Stovall would pay for them, and Stovall's obligation to reimburse MMSP's

14   expenses incurred in connection with the Consulting Agreement were the essential terms of the

15   agreement. (Resp. 16:11–14) (citing *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d

16   250, 255 (Nev. 2012) (finding that price, scope of work, and time for performance in a design

17   contract were essential terms)).  MMSP contends that the Consulting Agreement did not need

18   to provide specific financing terms such as duration of the financing, the amount of loan

19   payments, or when payment would be due because they are not material terms. (*Id.* 16:18–19).

20   MMSP argues that context of the Consulting Agreement centered on the consulting services,

21   and not the financing that would take place if Stovall could not pay for MMSP's services. (*Id.*

22   16:9–17).  Because the parties dispute whether the Consulting Agreement is missing essential

23   terms, the Court finds that a genuine question of material fact exists as to its enforceability

24   because reasonable minds could differ over what terms were material to the Consulting

25

Agreement. *See Powers v. United Servs. Auto. Ass'n*, 979 P.2d 1286, 1289 (Nev. 1999) (explaining questions of materiality are questions of fact if reasonable minds may differ).

Stovall next argues that even if the Consulting Agreement is enforceable, she had no obligation to pay any alleged amounts due to MMSP under the Consulting Agreement, and therefore did not breach the Consulting Agreement. (Mot. Summ. J. 10:16–17). To support her position, Stovall cites Section three of the Consulting Agreement. Section three of the Consulting Agreement states "MMSP recognizes and accepts that MMS and MMST may not be able to pay for some or all of its Services as they are provided although they agree to use their best efforts to do so." (Consulting Agreement at 2, Ex. J to Mot. Summ. J., ECF No. 141-1). The Consulting Agreement further states that "MMSP, in conjunction with its efforts hereunder, arrange new or additional financing, secured or unsecured, to pay for its Services performed if MMS and MMST are not be able to pay for such services currently." (*Id.*). However, the Court is unpersuaded that Stovall (MMS and MMST), had no obligation to pay MMSP because Section three provides: "MMS and MMST agree to pay MMSP for its Services in connection with this Agreement at the hourly rate of $250.00, billed in quarter hour increments, plus all direct expenses incurred in implementing the Services hereunder." (Consulting Agreement at 2, Ex. J to Mot. Summ. J.). A reasonable juror could construe this as an agreement for Stovall to pay for MMSP's services. The language that Stovall relies on to support her argument that she is not obligated to pay could be a recognition that Stovall may not be able to pay for services "as they are provided," and will secure financing to pay for such services if Stovall is "not able to pay for such services *currently*." Thus, Stovall has not met her burden of establishing she did not have an obligation to pay.

In sum, there is a genuine dispute of material fact as to whether the Consulting Agreement is enforceable. Moreover, if enforceable, Stovall fails to meet her burden of establishing that she was not obligated to pay MMSP for the services MMSP rendered. Thus,

summary judgment is DENIED as to the breach of contract claim regarding the Consulting Agreement.

### 2. Loan Agreement

Defendant next moves for summary judgment on Plaintiffs' breach of contract claim as it relates to the Loan Agreement. (Mot. Summ. J. 12:1–2). "[E]very obligation secured by property through a mortgage or a deed of trust is subject to Nevada's antideficiency statutes." *Badger v. Eighth Jud. Dist. Ct.*, 373 P.3d 89, 93 (Nev. 2016). NRS 40.455(1) does not bar a party seeking a deficiency judgment from another solely because the foreclosed real property lies in a different state. *Mardian v. Greenberg Family Trust*, 359 P.3d 109, 113 (Nev. 2015). If a foreclosure sale results in sale proceeds less than the amount owed to the lender, the lender, with certain exceptions, may seek recovery of that difference by timely "application" to the court for a deficiency judgment. NRS 40.455(1). The meaning of the term "application" has been the subject of different interpretations, but the essence of the requirement is that the application must seek a deficiency following the foreclosure sale. *Lavi v. Eighth Jud. Dist. Ct.*, 325 P.3d 1265, 1269 (Nev. 2014). NRS 40.455(1) requires that an application for a deficiency judgment be made within six months after the date of a foreclosure sale. *Id.* at 95; *see also Walters v. Eighth Jud. Dist. Ct. of State ex rel. Cnty. of Clark*, 263 P.3d 231, 234 (Nev. 2011) ("Under the clear and unambiguous language of NRS 40.455(1), an application must be made within six months."). "[T]he six-month statutory deadline is a rigid one, and. . . a creditor's failure to timely file an application for a deficiency judgment per NRS 40.455 is fatal." *Badger v. Eighth Jud. Dist. Ct.*, 373 P.3d at 95.

On May 13, 2021, MMSP competed the foreclosure sale of the Back 54 Acres, which Stovall alleges served as security, or collateral, for the Loan Agreement. (Loan Agreement at 3, Ex. K to Mot. Summ. J., ECF No. 141); (Notice of Default, Ex. F to Mot. Summ. J., ECF No. 141-1). There is no evidence in the record to suggest that MMSP has made an application to

recover any deficiency.  Plaintiffs' FAC, and the original Complaint, make no mention of a foreclosure sale or that it is seeking to recover a deficiency under NRS 40.455.  Moreover, even if Plaintiffs' FAC could be construed as asserting an application to recover, it was filed nearly two and half years after the six-month deadline had passed. (*See* FAC) (filed May 31, 2024). The six-month statutory deadline is rigid, and the record reflects Plaintiffs missed it making them ineligible to collect under the loan agreement.[2]  Thus, Stovall has met her initial burden of negating an essential element of Plaintiffs' claim.

The burden now shifts to Plaintiffs to establish that a genuine dispute of material fact exists.  Plaintiffs contend that the Loan Agreement was not secured by the Back 54 Acres, and thus the Back 54 foreclosure was not and could not have been to recover Stovall's debts under the Loan Agreement making the 6-month deadline inapplicable. (Resp. 18:7–8).  The Loan Agreement provides: "The Lender holds a note secured by a Deed of Trust related to [the Back 54 Acres], as additional security for this Loan. Formerly this property either served as Security for prior loans made by the Lender to the Borrower or was owned directly by the Lender." (Loan Agreement at 3, Ex. K to Mot. Summ. J., ECF No. 141-1).  Plaintiffs admit that the Loan Agreement refers to the Back 54 Acres as "additional security," but argues that the term does not mean "collateral." (Resp. 19:13–14).  Rather, Plaintiffs contend that that the parties intended "security" to mean as the dictionary also defines it: "the quality of state of being secure: such as. . . freedom from fear or anxiety." Merriam-Webster Dictionary, Security, https://www.merriam webster.com/dictionary/security?src=search-dict-box (last visited September 2, 2025).  To support this argument, Plaintiffs point out that paragraph six of the

---

[2] Plaintiffs argue that Stovall waived her anti-deficiency statute because she failed to assert the one-action rule as an affirmative defense. (Resp. 22:16–26).  But Stovall does not seek summary judgment under Nevada's "one-action rule" codified in NRS 40.430(1), which states a debtor can compel a creditor foreclose on the property before enforcing a guaranty.  In fact, Stovall does not cite NRS 40.430(1) in her Motion for Summary Judgment. Stovall contends she asserts the anti-deficiency statute (NRS 40.455(1)) as a statute of limitations defense. (Reply, 8:15–22, ECF No. 149).  Stovall asserted an affirmative defense based on the statute of limitations. (Answer to FAC 9:6–9, ECF No. 116).

Loan Agreement is titled "Collateral/Security," and the Court notes that paragraph seven is titled "Additional Collateral/Security," whereas the paragraph Stovall relies on to support its position is titled "Relationship to the Loan and Deed of Trust on the 'back 54 Acres.'" (Loan Agreement at 3, Ex. K to Mot. Summ. J.). Plaintiffs next point out that paragraph eight states that the Back 54 Acres was "formerly" Security (with a capital "S") for loans by MMSP to Stovall, but it describes the Back 54 Acres currently being "additional security" (lower case "s") for the loan. (Resp. 20:4–8). Plaintiffs contend that because the Loan Agreement referenced the Back 54 Acres as a "former" Security, the parties understood that the Back 54 Acres was no longer collateral for MMSP loans to Stovall. Plaintiffs also argue that the use of an upper case "S" in "Security" when referring to it as collateral and lower case "s" when referring to it as "additional security" shows that the parties understood the two uses to have different meanings. (Resp. 20:9–11). The Court finds that Plaintiffs have met their burden of establishing that a genuine dispute of material fact exists as to whether the Back 54 Acres was collateral for the Loan Agreement. Thus, summary judgment is DENIED as the breach of contract claim as it relates to the Loan Agreement.

### 3. Loan Servicing Agreement

Stovall moves for summary judgment on the breach of contract claim pled against her as it relates to the Loan Servicing Agreement. (Mot. Summ. J. 13:20). Stovall argues that she did not breach the Loan Servicing Agreement because she had to obligation under the agreement to make any payments to Plaintiffs. (*Id.* 13:22). In response, Plaintiffs contend that Stovall's characterization of the Loan Servicing Agreement is too narrow, and the agreement must be viewed in context with the Loan Agreement and Consulting Agreement. (Resp. 24:4–5). Plaintiffs argue that the purpose of the Loan Servicing Agreement was to set forth how Stovall would pay amounts she owed MMSP under the Loan Agreement, which provided financing for MMSP's services under the Consulting Agreement. Plaintiffs ultimately contend that where

1  Stovall has breached her agreement to pay MMSP under the Loan Agreement and Consulting

2  Agreement and breached her obligation to execute a new secured loan agreement and note

3  memorializing interest and consulting services that have accrued and payments received

4  pursuant to the Loan Servicing Agreement, she has breached the Loan Servicing Agreement.

5  The Court agrees with Plaintiffs.  Because genuine disputes of material fact exist regarding the

6  Consulting Agreement and Loan Agreement, the Court finds that Stovall has failed to meet her

7  burden at this stage as to the breach of contract claim for the Loan Servicing Agreement.  Thus,

8  summary judgment for this claim is DENIED.

9  **B.  Account Stated**

10  Stovall next moves for summary judgment on Plaintiffs' account stated claim. (Mot.

11  Summ. J. 14:4–5).  An account stated is "an agreement based upon prior transactions between

12  the parties with respect to the items composing the account and the balance due, if any, in favor

13  of one of the parties." *Old West Enterprises v. Reno Escrow Co.*, 476 P.2d 1, 2 (Nev. 1970).

14  "To effect an account stated, the outcome of the negotiations must be the recognition of a sum

15  due from one of the parties to the other with a promise, express or implied, to pay that balance."

16  *Id.*  "The amount or balance so agreed upon constitutes a new and independent cause of

17  action." *Id.*  "The genesis of an account stated is the agreement of the parties, express or

18  implied." *Id.*

19  Stovall contends that Plaintiffs' claim for an account stated fail as a matter of law

20  because Plaintiffs cannot establish that Stovall has any balance due relating to the Consulting

21  Agreement, Loan Agreement, or the Loan Servicing Agreement.  The parties appear to agree

22  that this claim is contingent on the breach of contract claims. (Resp. 24:25–26); (Reply 9:7–8).

23  Because summary judgment was denied on each breach of contract claim for the reasons

24  discussed above, summary judgment is DENIED as to the account stated claim.

25

**C. Conversion**

Stovall lastly moves for summary judgment on Plaintiffs' conversion claim. (Mot. Summ. J. 14:16–17). "Conversion is a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights." *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1048 (2000) (internal citations omitted). "Further, conversion is an act of general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge." *Id.* "Whether a conversion has occurred is generally a question of fact for the jury." *Id.*

Stovall asserts that the conversion claim is dependent on the breach of contract claims and summary judgment should be granted in her favor. (Mot. Summ. J. 14:22–24). The Court agrees that the two claims are contingent on the other. Because summary judgment was denied on each breach of contract claim, summary judgment is DENIED as to the claim for conversion as well.

**D. Plaintiff Alderson**

Stovall moves for summary judgment on Alderson's claims against her arguing that he was not a party to any of the three agreements that form the basis of the FAC.[3] (Mot. Summ. J., 15:1–2). But Stovall dedicates only three sentences to this argument and fails to present any case law or evidence to support her claim. "The failure of a moving party to file points and authorities in support of the motion constitutes a consent to the denial of the motion." LR 7-2(d). Accordingly, Stovall fails to meet her burden at the summary judgment stage as to this argument and it is thus DENIED.

---

[3] Plaintiffs, including Alderson, brings claims for breach of contract, account stated, conversion, and equitable indemnity against Stovall. (*See* FAC).

**E.  CONCLUSION**

      **IT IS HEREBY ORDERED** that Stovall's Motion for Summary Judgment, (ECF No. 141), is **DENIED**.

      **IT IS FURTHER ORDERED** that Stovall's Request for Judicial Notice, (ECF No. 141-1), is **GRANTED**.

      **DATED** this   9   day of September, 2025.

_____
Gloria M. Navarro, District Judge
United States District Court