**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

MMSP, LLC, *et al.*,

                    Plaintiffs,

    vs.

MINTA MAE STOVALL, *et al.*,

                    Defendants.

Case No.: 2:22-cv-01218-GMN-MDC

**ORDER**

Pending before the Court is the Motion to Dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), (ECF No. 193), filed by Plaintiffs/Counter-Defendants MMSP, LLC and Gerald Alderson, (collectively "MMSP").  Defendant/Counter-Claimant Susanna Pettis filed a Response, (ECF No. 194), to which MMSP replied, (ECF No. 195).  Further pending before the Court is the Motion to Dismiss under Nevada Revised Statute ("NRS") 41.637, (ECF No. 196), filed by MMSP.  Pettis filed a Response, (ECF No. 198), to which MMSP replied, (ECF No. 200).  Lastly, pending before the Court is the Motion for Summary Judgment filed by MMSP, (ECF No. 212).  Defendants/Counter-Claimants Minta Mae Stovall, an individual, and Minta Mae Stovall Trustee of the Minta Mae Stovall Revocable Living Trust (collectively "Stovall") filed a Response, (ECF No. 215), to which MMSP replied, (ECF No. 222).  For the reasons discussed below, the Court GRANTS MMSP's Motion to Dismiss under FRCP 12(b)(6), DENIES as moot its Motion to Dismiss under NRS 41.637, and DENIES its Motion for Summary Judgment.

I.    **BACKGROUND**

Pettis brings a single counterclaim against MMSP for abuse of process. (Counterclaim ¶¶ 20–24, ECF No. 191).  MMSP moves to dismiss Pettis's counterclaim against it. (*See generally* Mots. Dismiss, ECF Nos. 193, 196).

Stovall brings counterclaims for elder abuse, breach of fiduciary duty, conversion, fraud, breach of contract, accounting, and quasi contract/restitution/unjust enrichment arising out the business relationship between herself and MMSP. (Counterclaim, ECF No. 116).  Throughout MMSP and Stovall's business relationship, they would meet at the end of each calendar year to discuss MMSP's services performed under the consulting service agreements (the "Consulting Agreements") and developments in Stovall's financial situation. (Alderson Decl. ¶ 8, Ex. C to Mot. Summ. J., ECF No. 212-1).  At these meetings MMSP would answer any questions that Stovall had and discuss any of her concerns. (*Id.*).  At the end of these meetings, Stovall, and on occasion her adult daughter Susanna I. Pettis and/or Stovall's adult son David. R. Pettis, executed a release (collectively, the "Releases"), releasing MMSP from claims arising from or relating to their prior work. (*Id.* ¶ 9).  Each of the Releases state that the release was part of the consideration provided to MMSP in exchange for its financial and professional work. (*See* Releases, Ex. E to Mot. Summ. J.).

The Releases generally provided that:

> As further consideration for [MMSP] for their activities on our behalf, effective upon the date first written above, [Stovall], individually, and on behalf of their heirs, successors, administrators, trustees and assignees, finally, fully and forever release and discharge [MMSP] and all its past and present predecessors, successors, assignees, corporate parents, subsidiaries, affiliates, shareholders, directors, officers, attorneys, employees and agents from any and all causes of action, claims, suits, debts, liens, contracts, liabilities, agreements, costs, or demands for expenses or losses of any type, known or unknown, relative to any act, omission, event, fact or other thing arising out of or in any way related to prior work performed by [MMSP] for [Stovall].

(*Id.*).

MMSP moves for summary judgment on all counterclaims pled against it by Stovall arguing that they are barred by the Releases executed by Stovall. (Mot. Summ. J. 6:13–15, ECF No. 212).  In the alternative, MMSP moves for partial summary judgment on all the

counterclaims to the extent that they are time-barred. (*Id.* 6:16–21).  MMSP also moves to dismiss the counterclaim brought against it by Pettis.

## II.    LEGAL STANDARD

### A.  Motion to Dismiss

Dismissal is appropriate under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, FRCP 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend.  The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant. . . undue prejudice to the opposing party by virtue of. . . the amendment, [or] futility of the amendment. . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

**B. Motion for Summary Judgment**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by

demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn

in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.    DISCUSSION

The Court addresses MMSP's Motions to Dismiss before turning to its Motion for Summary Judgment.

### A.  Motions to Dismiss

MMSP seeks dismissal of Pettis's counterclaim on the following grounds: (1) Pettis fails to allege an abuse of process claim, (*see generally* 12(b)(6) Mot. Dismiss, ECF No. 193), and (2) Nevada's Anti-SLAPP statute, NRS 41.637, protects the activity that forms the basis of the abuse of process claim, (*see generally* NRS 41.637 Mot. to Dismiss, ECF No. 196).  The Court begins with MMSP's FRCP 12(b)(6) arguments.

Pettis alleges a single counterclaim against MMSP: abuse of process. (Counterclaim ¶¶ 20–24).  Pettis alleges that MMSP wrongfully misused the legal process by asserting claims against her that are frivolous. (Counterclaim ¶¶ 20, 21).

In Nevada, the elements of an abuse of process claim are "(1) an ulterior purpose by the defendants other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." *LaMantia v. Redisi,* 38 P.3d 877, 879 (Nev. 2002).  "An ulterior purpose is any improper motive underlying the issuance of legal process." *Posadas v. City of Reno,* 851 P.2d 438, 445 (Nev. 1993).  It is not necessary to show malice or want of probable cause to recover for abuse of process. *Id.*  Under Nevada law, the filing of a complaint itself does not constitute an abuse of process. *Laxalt v. McClatchy,* 622 F. Supp. 737, 752 (D. Nev. 1985).  Rather, it is "the action[ ] which the [filer takes] (or fail[s] to take) *after* the filing of the complaint" that constitutes abuse of process. *Id.* (emphasis in original).  "[T]he gist of the tort [of abuse of process] is . . . misusing or misapplying process justified in itself for an end other than that which it was designed to accomplish." *Id.* at 751 n.

3 (quoting Prosser, *Law of Torts* 856 (4th ed. 1971)); *see also Nevada Credit Rating Bureau, Inc. v. Williams,* 503 P.2d 9, 12 (Nev. 1972) ("The action for abuse of process hinges on the *misuse* of regularly issued process . . ." (emphasis added)).

To the extent that Pettis's abuse of process claim is premised on actions that took place prior to the FAC being filed, the claim fails as a matter of law. *See Laxalt*, 622 F. Supp. at 752 (explaining an abuse of process claim focuses on the action the filer takes *after* the filing of the complaint); (*see* Counterclaim ¶ 17). Moreover, to the extent the abuse of process claim is premised on MMSP filing the FAC against Pettis, the claim also fails as a matter of law. *See Laxalt,* 622 F. Supp. at 752 (explaining the filing of a complaint alone is insufficient to support an abuse of process claim); (*see* Counterclaim ¶ 9). Further, none of Pettis's specific allegations as to why MMSP's FAC is improper support an abuse of process claim; they merely dispute the merits of MMSP's claims against Pettis. (*See* Counterclaim ¶¶ 11–14, 16, 18).

Finally, Pettis alleges that MMSP's counsel insisted on conducting Pettis's deposition on dates they had already been informed were unworkable for Pettis's counsel due to conflicting professional and personal obligations. (*Id.* ¶ 15). Pettis further alleges that MMSP's counsel threatened to unilaterally notice the deposition despite the unavailability of Pettis's counsel. (*Id.*). But these allegations merely amount to disputes over scheduling that do not give rise to acts "so lacking in justification as to lose its legitimate function as a reasonably justifiable litigation procedure." *Momot v. Mastro*, 2:09-cv-00975-RTH-LRT, 2010 U.S. Dist. 2010 WL 2696635, at *4 (D. Nev. July 6, 2010). Pettis therefore fails to sufficiently allege a willful act in the use of the legal process not proper in the regular conduct of the proceeding.

Accordingly, Pettis's counterclaim for abuse of process fails and is DISMISSED with prejudice,[1] and MMSP's Motion to Dismiss Pettis's counterclaim is GRANTED.[2]

### B. Motion for Summary Judgment

MMSP first moves for summary judgment arguing that all of Stovall's counterclaims against it are barred by the Releases executed by Stovall. (Mot. Summ. J. 6:13–15, ECF No. 212). In the alternative, MMSP moves for partial summary judgment on all the counterclaims to the extent that they are time-barred. (*Id.* 6:16–21). The Court begins by determining whether the Releases bar Stovall's counterclaims.

#### 1. Releases of Liability

MMSP contends that summary judgment should be granted against Stovall on all of her counterclaims because they are barred by the Releases. Because release is an affirmative defense, *In re Cellular 101, Inc.*, 539 F.3d 1150, 1155 (9th Cir. 2008), MMSP, as the moving party, "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co.*, 213 F.3d at 480. This means MMSP has the "initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.*

Unambiguous releases supported by consideration are enforceable under Nevada law and are governed by principles of contract law. *Chwialkowski v. Sachs*, 834 P.2d 405, 406 (Nev. 1992). The Court begins by considering whether the Releases were supported by consideration. To be enforceable, a release, like any contract, must be supported by consideration. *Pink v. Busch*, 691 P.2d 456, 459 (Nev. 1984). "Consideration is the exchange

---

[1] Pettis requests leave to amend arguing that she "can amend her Counterclaim to allege additional specific facts regarding the willful acts and ulterior motive of [MMSP] to support her claim." (Resp. 8:19–20). But Pettis does not offer any examples of additional facts she could plead to support her claim. The Court therefore finds that amendment would be futile.

[2] Because the Court grants MMSP's Motion to Dismiss under FRCP 12(b)(6), MMSP's Motion to Dismiss under NRS 41.637 is DENIED as moot.

of a promise or performance, bargained for by the parties." *Cain v. Price*, 415 P.3d 25, 28 (Nev. 2018). "A party's affirmation of a preexisting duty is generally not adequate consideration to support a new agreement." *Id.* "Consideration is not adequate when it is a mere promise to perform that which the promisor is already bound to do." *Clark Cnty. v. Bonanza No.1*, 615 P.2d 939, 944 (Nev. 1980). Summary judgment based on a release must be denied where there is an issue of fact regarding whether a release was supported by consideration. *Shapro v. Forsythe*, 747 P.2d 241, 243 (Nev. 1987).

MMSP argues that the Releases are supported by consideration because, in order for MMSP to perform the services under the Consulting Agreements, Stovall had to release MMSP from liability. (Mot. Summ. J. 16:17–27). But the Releases themselves do not identify any consideration—apart from boilerplate language stating consideration exists—that Stovall received in exchange for the Releases, nor do they obligate MMSP to do anything except continue to perform under the Consulting Agreements. (*See* Releases, Ex. E to Mot. Summ. J.). Because MMSP was already obligated to perform under the Consulting Agreements, the continued performance cannot be considered new consideration to support the Releases. *See Cain*, 415 P.3d at 28; *Clark Cnty.*, 615 P.2d at 944. MMSP fails to demonstrate that Stovall received any new consideration under the Releases. MMSP therefore fails to meet its initial burden of establishing the absence of a genuine issue of fact on each issue material to its defense. *See Shapro*, 747 P.2d at 243. Because MMSP fails to meet its burden, the Court need not consider Stovall's arguments for this issue. *See Adickes*, 398 U.S. at 158–60. Thus, MMSP's Motion for Summary Judgment based on its argument that Stovall's counterclaims are barred by the Releases is DENIED.

### 2. Statute of Limitations

Stovall brings counterclaims for elder abuse, breach of fiduciary duty, conversion, fraud, breach of contract, accounting, and quasi contract/restitution/unjust enrichment that are based,

among other things, on MMSP's alleged failure to give to Stovall certain proceeds that she was owed from the 2008 sale of Stovall's interest in a hotel called Stovall's Inn (the "Stovall's Inn Transaction"). (*See generally* Counterclaim). MMSP moves for partial summary judgment on Stovall's counterclaims to the extent the actions forming the basis for the counterclaims are time-barred.

The statute of limitations applicable to claims for elder abuse, breach of fiduciary duty, conversion, and fraud is three years. *Cantlon Tr. of William & Margaret Cantlon Fam. Tr. Dated Mar. 7, 2000 v. Wells Fargo & Co.*, 475 P.3d 776, 776 (Nev. 2020) (unpublished disposition) (elder abuse and breach of fiduciary duty); *Bemis v. Est. of Bemis*, 967 P.2d 437, 440 (1998) (conversion); NRS 11.190(3)(c) (conversion); Nev. Rev. Stat. 11.190(3)(d) (fraud). The statute of limitations applicable to a claim for an accounting is six years. *Job's Peak Ranch Cmty. Ass'n, Inc. v. Douglas Cnty.*, No. 55572, 2015 WL 5056232, at * 4 (Nev. 2015) (unpublished disposition). The statute of limitations applicable to a claim for quasi contract/restitution/unjust enrichment is four years. *In re Amerco Derivative Litig.*, 252 P.3d 681, 703 (2011); Nev. Rev. Stat. 11.190(2)(c).

A statute of limitations begins to run at the time a claim accrues. In this case, some portions of Stovall's counterclaims began to accrue in 2008 when the Stovall Inn Transaction proceeds were distributed, which would make those portions barred by the statute of limitations for all of the counterclaims unless a tolling rule applies.

One such tolling rule is the discovery rule. Under the Nevada "discovery rule," "the statutory period of limitations is tolled until the injured party discovers or reasonably should have discovered facts supporting a cause of action." *Petersen v. Bruen*, 792 P.2d 18, 20 (Nev. 1990). MMSP contends that Stovall discovered or reasonably should have discovered the facts supporting her counterclaims concerning the Stovall Inn Transaction on April 30, 2008, when the Stovall's Inn Transaction closed and proceeds were distributed, or at the very latest in June

2009 when Stovall expressed concern over where the proceeds at issue from the transaction were allocated. (Mot. Summ. J. 19:17–25).

On November 26, 2007, Stovall executed an agreement (the "Offset Agreement") that detailed the amount of proceeds from the Stovall's Inn Transaction that she was to receive when the transaction closed. (Offset Agreement, Ex. F. to Mot. Summ. J., ECF No. 212-2). The Offset Agreement also detailed where lump sums of funds were to be allocated elsewhere. (*Id.*).  The Offset Agreement makes clear that Stovall knew and agreed to the amount of the proceeds from the Inn Transaction based on the agreement's language: "[t]he offset of the Indebtedness identified in this agreement shall be absolute, binding and complete.  Neither party shall owe the other any amounts whatsoever resulting from the currently existing Indebtedness as a result of this offset." (*Id.* at 3).  On April 30, 2008, the Stovall's Inn Transaction closed, and the funds were distributed pursuant to the Offset Agreement. (Alderson Decl. ¶ 14, Ex. C to Mot. Summ. J., ECF No. 212-1).  But just because Stovall knew, and even agreed to, where the Stovall's Inn Transaction proceeds were to be allocated, does not necessarily mean she discovered or should have reasonably discovered the facts forming the basis of portions of her counterclaims.  A reasonable juror could determine that Stovall did not discover any bad acts related to the Stovall's Inn Transaction just by knowing the lump sum apportionment of the proceeds.

MMSP's alternative argument is that Stovall discovered or should have reasonably discovered the facts supporting her counterclaims when she began to express concern over where the Stovall's Inn Transaction proceeds went and requested a spreadsheet from MMSP of the detailed accounting.  For example, on June 16, 2009, Stovall wrote to her accountant that "[MMSP] still won't give me spread sheet so I can see where all the $3,000,000 went." (Stovall Email to Accountant, Ex. G to Mot. Summ. J, ECF No. 212-2).  But MMSP does not contend or offer any evidence to show that Stovall did receive a spreadsheet of the proceed allocations.

That Stovall requested a spreadsheet of the accounting does not conclusively establish that Stovall discovered or reasonably should have discovered the facts supporting her counterclaims, especially if no spreadsheet was provided to her.  Thus, MMSP fails to meet its initial burden of establishing the absence of a genuine issue of fact for its statute of limitations defense.  Because MMSP fails to meet its burden, the Court need not consider Stovall's arguments for this issue.  MMSP's request for partial summary judgment based on its statute of limitations defense is therefore DENIED.

**IV.    CONCLUSION**

**IT IS HEREBY ORDERED** that MMSP's Motion to Dismiss, (ECF No. 193), is **GRANTED**.

**IT IS FURTHER ORDERED** that MMSP's Motion to Dismiss, (ECF No. 196), is **DENIED** as moot.

**IT IS FURTHER ORDERED** that MMSP's Motion for Summary Judgment, (ECF No. 212), is **DENIED**.

**IT IS FURTHER ORDERED** that MMSP and Pettis must file a Joint Status Report within 14 days of this Order.  The Joint Status Report should inform the Court of the status of discovery on MMSP's claims against Pettis and whether any discovery remains.

**DATED** this __27__ day of March, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court